UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GREAT LAKES INSURANCE SE, | ) | |
| | ) | |
| Plaintiff, | ) | 20 C 5599 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| NR 1 TRANSPORT, INC. and NZ SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

In this diversity suit, Great Lakes Insurance SE alleges that its insured, NR 1 Transport, Inc., must return all or part of an insurance payment that it received after making a claim for a damaged tractor, and, in the alternative, that NZ Services, Inc. is liable as a bailee for the theft of parts from the tractor. Doc. 1. NR 1 Transport moves under Civil Rule 12(b)(6) to dismiss the claims against it, as does NZ Services. Docs. 15-16. The motions are granted, though Great Lakes will have the opportunity to replead.

### Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Great Lakes's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Great Lakes as those

1

materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

In March 2020, an NR 1 Transport tractor was damaged in an accident in Texas. Doc. 1 at ¶ 10. Great Lakes, as NR 1 Transport's insurer, paid a nonparty towing company about $8,200 to tow the tractor to Joliet, Illinois, and paid NZ Services about $4,200 to store the tractor in its facility. *Id*. at ¶¶ 1, 11-14. NR 1 Transport submitted an insurance claim for the damage, and Great Lakes paid the tractor's "actual cash value," just under $100,000. *Id*. at ¶ 15.

Under the terms of the insurance policy, Great Lakes's payment of the claim entitled it to the tractor's salvage value. *Id*. at ¶¶ 16, 35-36. Great Lakes found a buyer who was willing to pay about $23,000, and it instructed NR 1 Transport not to alter the tractor, title for which had transferred to Great Lakes. *Id*. at ¶¶ 17-20, 22-23. When the buyer arrived to pick up the salvage, it appeared that someone had removed some components and swapped out others for damaged parts. *Id*. at ¶¶ 24-25. The buyer backed out of the deal. *Id*. at ¶ 28.

After learning of this apparent looting of components from the salvage, a Great Lakes representative phoned NZ Services. *Id*. at ¶ 26. Nerijus Zitkevicius, NR 1 Transport's owner, picked up. *Id*. at ¶ 27. Zitkevicius denied knowing who owned NZ Services, though he in fact owned both NZ Services and NR 1 Transport. *Id*. at ¶¶ 7, 27, 30. Zitkevicius further stated that no alterations had been made to the salvage. *Id*. at ¶ 27. Not only was this false, but his two companies were in fact directly involved in making the alterations. *Id*. at ¶ 34.

In its "Conditions" section, the insurance policy—to which NR 1 Transport, but not NZ Services, is a party, Doc. 15 at 3—states that if a covered vehicle is lost or damaged, the insured must "protect [it] from other or further loss or damage." Doc. 1-1 at 10. If the insured fails to

protect the lost or damaged vehicle, then "[a]ny such other or further loss or damage due directly or indirectly to th[is] failure … shall not be recoverable." *Ibid*. The court will refer to this provision as the "protection provision." The policy also contains a provision governing "misrepresentation and fraud," which states:

> If the [in]sured has concealed or misrepresented any material fact or circumstance concerning this Insurance, or if the [in]sured shall make any claim knowing the same to be false or fraudulent, as regards to amount or otherwise, this Insurance shall become void and all claim[s] hereunder shall be forfeited.

*Id*. at 13 (capitalization altered). The court will refer to this provision as the "fraud provision."

## Discussion

The complaint asserts four counts, three against NR 1 Transport and one against NZ Services. Doc. 1 at ¶¶ 40-67. Count I seeks a declaratory judgment that NR 1 Transport's alleged misrepresentations—concerning the ownership of NZ Services and the circumstances around the alterations to the salvage—voided the policy under the fraud provision. *Id*. at ¶¶ 40-46. Relatedly, and on the assumption that the policy is voided, Count II seeks recovery from NR 1 Transport of the approximately $112,000 that Great Lakes paid the towing company, NZ Services, and NR 1 Transport for the costs of towing, storing, and replacing the damaged tractor. *Id*. at ¶¶ 47-53. Count III, pleaded in the alternative, invokes the policy's protection provision in seeking the tractor's $23,000 salvage value, which Great Lakes claims NR 1 Transport must pay for failing to protect the tractor from further damage after it was towed to NZ Services's facility. *Id*. at ¶¶ 54-59. Count IV, also pleaded in the alternative, alleges that NZ Services is liable for the $23,000 salvage value under an implied bailment agreement between it and Great Lakes. *Id*. at ¶¶ 60-67.

The parties agree that the policy is governed by Illinois law. Doc. 21 at 6; Doc. 25 at 1-2, 4-5. Under Illinois law, an insurance policy, like any contract, "is to be construed as a whole,

3

giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006). The court's "primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1003 (Ill. 2010). The court "must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007). "While [the court] will not strain to find an ambiguity where none exists, neither will [it] adopt an interpretation which rests on gossamer distinctions that the average person, for whom the policy is written, cannot be expected to understand." *Munoz*, 930 N.E.2d at 1004 (internal quotation marks and citation omitted).

## I.     The Fraud Provision (Counts I and II)

NR 1 Transport argues that the policy's fraud provision provides no basis for voiding the policy. Doc. 15 at 6-8. In its view, the provision applies only when the "insured submit[s] a false proof of loss, provide[s] false information during the application process, or … ma[kes] a false statement … during the investigation of a claim." *Id*. at 7-8; *see* Doc. 25 at 2-3. Thus, according to NR 1 Transport, the provision does not apply here because Zitkevicius's alleged misrepresentations had nothing to do with the formation of the contract or the validity of the $100,000 claim for the damaged tractor's cash value. Doc. 15 at 7. Great Lakes urges a broader reading of the provision, arguing that it applies when "there are misrepresentations and concealment concerning the insurance *generally*." Doc. 21 at 7 (emphasis added). "Just because a legitimate claim may have existed when the claim was initially tendered," argues Great Lakes, "does not mean th[e] [fraud] provision has no applicability to subsequent conduct involving that claim." *Id*. at 2. NR 1 Transport has the better of the argument.

4

In defending its broad reading of the fraud provision, Great Lakes emphasizes its disjunctive form: the provision states that the policy is void "[i]f the [in]sured has concealed or misrepresented any material fact or circumstance concerning this Insurance, *or* if the [in]sured shall make any claim knowing the same to be false or fraudulent." Doc. 1-1 at 13 (emphasis added); *see* Doc. 21 at 7. But the provision's use of the disjunctive strongly suggests that the first clause—governing concealment and misrepresentation of facts "concerning this Insurance"—cannot be as broad as Great Lakes proposes. Assuming that "concerning" means "relating to," *Concerning*, Webster's Third New International Dictionary (1961) (lone definition), the key question here is what it means for a misrepresentation to relate to "this Insurance." There are two plausible answers. The first interprets "this Insurance" broadly, as referring to the ongoing relationship between the parties, *i.e.*, "the state of being insured." *Insurance*, *Webster's Third New International Dictionary*, *supra* (def. 1a). The second interprets "this Insurance" narrowly, as referring to the formation of the insurance contract, *i.e.*, "the action or process of insuring," *ibid*.

The broader meaning is difficult to reconcile with the provision's text. If *any* misrepresentation concerning the ongoing coverage voids the policy under the first clause of the disjunctive, then why would the second clause need to separately state that a false or fraudulent claim voids the provision? The answer is that there would be no such need. Great Lakes's broad reading of the disjunctive's first half thus renders its second half entirely superfluous, running afoul of the principle that insurance policies should not be read in a manner that renders any provision superfluous. *See Berg v. N.Y. Life Ins. Co.*, 831 F.3d 426, 430 (7th Cir. 2016) (rejecting a party's reading of an insurance policy because it rendered a provision "surplusage," adding that the court "'w[ould] not interpret an insurance policy in such a way that any of its

5

terms are rendered meaningless or superfluous'") (quoting *Pekin Ins. Co. v. Wilson*, 909 N.E.2d 379, 387 (Ill. App. 2009)).

NR 1 Transport's narrower reading of "this Insurance"—under which the term refers only to the process of contract formation—allows the disjunctive's two clauses to do independent work, articulating two separate grounds for voiding the policy. The first clause applies if the insured made a material misrepresentation in the contract-formation process. The second clause applies if the insured submits a false or fraudulent claim. Because this reading of the fraud provision gives effect to each of the disjunctive's two clauses, it is the better of the two competing interpretations offered by the parties. *See Market St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 954-55 (7th Cir. 2020) ("Illinois law commands that '[a]ll the provisions of the insurance contract, rather than an isolated part, should be read together to interpret it,' and 'meaning and effect must be given to every part of the contract including all its terms and provisions, so no part is rendered meaningless or surplusage unless absolutely necessary.'") (alteration in original) (citations omitted) (first quoting *U.S. Fire Ins. Co. v. Schnackenberg*, 429 N.E.2d 1203, 1205 (Ill. 1981); and then quoting *Coles-Moultrie Elec. Coop. v. City of Sullivan*, 709 N.E.2d 249, 253 (Ill. App. 1999)).

A consequence of the court's adoption of this reading is that not every material misrepresentation relating to the insurance triggers the fraud provision and voids the policy. Zitkevicius's alleged misrepresentations are among those that do not void the policy, for they in no way relate to the formation of the contract—as Great Lakes does not argue that NR 1 Transport concealed or misrepresented any fact when negotiating or acquiring the policy—or comprise a false or fraudulent insurance claim—as Great Lakes does not dispute NR 1

Transport's claim that the tractor was damaged and that its value was approximately $100,000. The fraud provision is therefore inapplicable.

Great Lakes complains that this interpretation of the provision means that, "as long as at some point there was a valid claim, Great Lakes is required to turn a blind eye to any subsequent fraud, material misrepresentations, or conversion." Doc. 21 at 6-7. There is no such requirement, as the policy does not preclude Great Lakes from pursuing other remedies if it was harmed by NR 1 Transport's dishonest conduct—for example, by suing for fraud or breach of contract without seeking to void the policy under the fraud provision. So, while NR 1 Transport allegedly acted in a dishonest manner, the policy's text does not allow for that dishonesty to void the policy. And despite its concerns about unfairness, it is Great Lakes that seeks an arguably unfair outcome: it seeks recoupment of its entire $100,000 insurance payment to NR 1 Transport for the actual cash value of the tractor, plus the towing and storage expenditures, even though NR 1 Transport's alleged misconduct in no way concerned the validity of NR 1 Transport's claim that the tractor was damaged or that its actual cash value was $100,000.

Great Lakes next argues that the fraud provision voids the policy under the second clause of the disjunctive—"if the [in]sured shall make any claim knowing the same to be false or fraudulent." *Id*. at 7. Great Lakes reasons as follows: the policy entitled Great Lakes to the salvage rights in the damaged tractor; those rights, therefore, "are part and parcel of the [insurance] claim"; and Zitkevicius allegedly lied about the alterations to the tractor. *Ibid*. In other words, the complaint alleges that "Zitkevicius, as owner of [NR 1] Transport, converted the salvage, submitted a Proof of Loss and Salvage Removal Authorization knowing he had converted or would convert the salvage, replaced the converted parts with worthless damaged parts, lied to Great Lakes about his identity and relationship to NZ Services, and falsely claimed

7

there were no alterations to the salvage," and "[t]hus, … [NR 1] Transport submitted these claim documents 'knowing the same to be false or fraudulent, as regards to amount or otherwise.'" *Ibid*. (quoting Doc. 1-1 at 13). Great Lakes's argument fails to persuade.

For one thing, the argument mischaracterizes the complaint—which, for instance, does not allege that Zitkevicius personally looted the salvaged tractor or that NR 1 Transport intended to loot the tractor at the time it submitted its claim. In any event, Zitkevicius's alleged misrepresentations do not render the claim "false or fraudulent." Great Lakes points to no untruths in the actual insurance claim—that the tractor was damaged in a traffic accident while being driven by an NR 1 Transport employee, Doc. 1 at ¶ 10—and this holds even if, at the time it submitted the claim, NR 1 Transport intended to later convert Great Lakes's property by swapping out the salvage's working parts for damaged parts.

In sum, any misrepresentations made by Zitkevicius in connection with the ownership of NZ Services or the alterations made to the salvaged tractor did not trigger the policy's fraud provision. Accordingly, Great Lakes is not entitled to deploy the fraud provision to void the policy or to recover from NR 1 Transport the approximately $112,000 it paid for towing, storing, and replacing the tractor. Counts I and II are dismissed.

## II. The Protection Provision (Count III)

In Count III, Great Lakes claims that even if it cannot recoup from NR 1 Transport the entire $112,000 it paid to tow, store, and replace the damaged tractor, it ought at least to recoup—under the policy's protection provision—the tractor's $23,000 salvage value. Doc. 1 at ¶¶ 47-53. As noted, that provision imposes a duty on NR 1 Transport to "protect the [damaged] Automobile from other or further loss of damage," and provides that "[a]ny such other or further loss or damage due directly or indirectly to the [in]sured's failure to protect the Automobile shall not be recoverable under this policy." Doc. 1-1 at 10. NR 1 Transport argues that Count III

should be dismissed because the provision operates only to limit its *own* ability to recover losses arising from its failure to protect the damaged tractor, and does not permit Great Lakes to recover *Great Lakes's* losses arising from such a failure. Doc. 15 at 8-10.

Great Lakes does not meaningfully respond to this argument. Although Great Lakes's complaint quite clearly conveys that the basis for recovery in Count III is the protection provision, Doc. 1 at ¶ 51, its opposition brief states that "Great Lakes is seeking to void the Policy and have the claim declared forfeited pursuant to Paragraph 18 [the fraud provision], not Paragraph 9 [the protection provision]," as "is expressly stated in Count II." Doc. 21 at 9; *see also id*. at 2 ("It is under Paragraph 18—not Paragraph 9—that Great Lakes is seeking to recoup the amounts paid. … The Policy plainly permits this recourse and Transport's sole citation to Paragraph 9 is misguided."). Great Lakes seemingly ignores the fact that NR 1 Transport seeks dismissal of Count III as well—in fact, Great Lakes's opposition brief nowhere mentions Count III. By explicitly disclaiming reliance on the protection provision as a basis for recovery, it has forfeited any argument that it can recover $23,000 under that provision. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Lekas v. Briley*, 405 F.3d 602, 614-15 (7th Cir. 2005) (holding that the plaintiff abandoned a claim where "he did not present legal arguments or cite relevant authority to substantiate that claim in responding to defendants' motion to dismiss"). Count III is therefore dismissed.

### III. Implied Bailment (Count IV)

Count IV, which alleges that NZ Services is liable to Great Lakes on an implied bailment theory, seeks recovery of $23,000 for the tractor's salvage value. Doc. 1 at ¶¶ 54-59. This is the

only claim Great Lakes asserts against NZ Services, and $23,000 is too small an amount in controversy to bring a state law claim against that defendant under the diversity jurisdiction. *See* 28 U.S.C. § 1332(a); *Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001) ("In diversity cases, when there are two or more defendants, plaintiff may aggregate the amount against the defendants to satisfy the amount in controversy requirement only if the defendants are jointly liable; however, if the defendants are severally liable, plaintiff must satisfy the amount in controversy requirement against each individual defendant."). However, because Great Lakes's state law claims against NR 1 Transport exceed $75,000 and thus fall within the court's original jurisdiction under § 1332(a), the court has power under 28 U.S.C. § 1367(a) to exercise supplemental jurisdiction over Great Lakes's related implied bailment claim against NZ Services. But having dismissed all claims against NR 1 Transport, the court may, in its discretion, decline under 28 U.S.C. § 1367(c)(3) to exercise that power. The court will exercise that discretion and relinquish its jurisdiction over Count IV.

Generally speaking, when a court before trial has dismissed all claims within its original jurisdiction, it "should relinquish jurisdiction over the remaining [supplemental] state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *see also Dietchweiler ex rel. Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) ("[W]hen the [original-jurisdiction] claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims."). That general rule has three exceptions: "when the [refiling] of the [supplemental] claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the [supplemental] claims; and when it is clearly apparent how the [supplemental] claim[s] [are] to be decided." *Williams*, 509 F.3d at

10

404; *see also RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 480 (7th Cir. 2012) (same).

None of the exceptions applies here. First, if this court relinquishes supplemental jurisdiction over the implied bailment claim against NZ Services, Illinois law would give Great Lakes one year to refile that claim in state court if the limitations period expired while the case was pending here. *See Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 515 (7th Cir. 2009) (citing 735 ILCS 5/13-217); *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (same). Second, substantial federal judicial resources have not yet been committed to resolving the implied bailment claim. Third, it is not "absolutely clear how the [supplemental] claim[] can be decided." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994). Because no exception applies, relinquishing jurisdiction over that claim is the appropriate course under § 1367(c)(3). *See Dietchweiler*, 827 F.3d at 631; *RWJ Mgmt.*, 672 F.3d at 479-82.

Before concluding, the court notes that NZ Services is wrong to assert that the court lacks jurisdiction over the implied bailment claim. Doc. 16 at 4-5; Doc. 25 at 7. As noted, the court has supplemental jurisdiction over that claim, and has the power (though not the obligation) to continue to exercise that jurisdiction even after dismissing Great Lakes's claims against NR 1 Transport. The dismissal of Count IV is not due to want of jurisdiction, but rather is a discretionary decision under § 1367(c)(3) to decline to exercise the supplemental jurisdiction granted by § 1367(a).

## Conclusion

Defendants' motions to dismiss are granted. The dismissal of Counts I, II, and III is without prejudice to Great Lakes attempting to replead them, or to plead other claims, in an amended complaint. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786

F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend … ."). The dismissal of Count IV is without prejudice to Great Lakes reasserting it either in an amended complaint or in state court. Great Lakes has until June 23, 2021 to file an amended complaint, and if Great Lakes amends, Defendants will have until July 14, 2021 to file a responsive pleading. If Great Lakes does not amend, the dismissal of Counts I, II, and III will automatically convert to a dismissal with prejudice, the court will relinquish jurisdiction over Count IV, and judgment will be entered.

June 2, 2021

_____
United States District Judge